[ECF No. 28]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **SAM LI,** <br><br>     **Plaintiff,** <br><br>   v. <br><br> **SUSHI TO GO CHERRY HILL, LLC,** <br> **et al.,** <br><br>     **Defendants.** | Civil No. 22-4734 (EAP) |

## MEMORANDUM OPINION

This matter comes before the Court upon the parties' Joint Motion, ECF No. 28, filed by Plaintiff Sam Li ("Plaintiff") and Defendants Sushi To Go Cherry Hill, LLC ("Sushi To Go"), John Zhang, and Cindy Doe ("Defendants"), seeking approval of a proposed settlement which resolves Plaintiff's wage-and-hour claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. §§ 34:11-56a, *et seq.*, for alleged unpaid overtime and minimum wages. The Court has considered the parties' submissions and heard oral argument on the record at a settlement hearing pursuant to Federal Rule of Civil Procedure 78(a). For the reasons that follow, and for good cause shown, the parties' Joint Motion is **GRANTED**, and the settlement agreement is **APPROVED.**

## FACTS AND PROCEDURAL HISTORY

This wage-and-hour dispute stems from Plaintiff's employment as a "delivery person and general restaurant support staff" at Sushi To Go, a restaurant located in Cherry Hill, New Jersey. ECF No. 1, Complaint ("Compl."), ¶¶ 7-8. According to the Complaint, Plaintiff was employed

at Sushi To Go from September 2021 to April 1, 2022. *Id.* Plaintiff alleges that Defendant Cindy Doe supervised Plaintiff, determined Plaintiff's salary rate, and personally paid Plaintiff. Compl. ¶¶ 11-12.[1] Also, Plaintiff alleges that Defendant John Zhang "participated in the day-to-day operations" of Sushi To Go. *Id.* ¶ 13. Plaintiff alleges that he worked six (6) days a week for approximately sixty-seven and a half (67.5) hours per week. *Id.* ¶¶ 24-25. Plaintiff states that he was compensated at a fixed rate of $2,100 per month, regardless of the number of hours worked. *Id.* ¶¶ 25-26. According to Plaintiff, he is not exempt, under federal or state law, from receiving compensation for overtime. *Id.* ¶ 32.

On July 25, 2022, Plaintiff filed this suit as a collective action on behalf of himself and other similarly situated employees. *Id.* ¶¶ 35-43. Plaintiff asserts claims for unpaid overtime wages under the FLSA (Count I), unpaid overtime wages under the NJWHL (Count II), unpaid minimum wages under the FLSA (Count III), and unpaid minimum wages under the NJWHL (Count IV). *Id.* ¶¶ 44-74. Following Plaintiff's filing of the Complaint, the parties engaged in discovery and exchanged information related to time worked, payroll records, and other documents. ECF No. 28-1, Letter Brief in Support of Joint Motion for Approval of Settlement ("Motion") at 5. On March 17, 2023, the Court entered an Order referring the case to mediation by the consent of the parties. ECF No. 23, Order for Mediation.

On May 2, 2023, the parties reached a settlement in principle. Motion at 2. Subsequently, on June 20, 2023, the parties executed a settlement agreement and release which resolved Plaintiff's individual claims and confirmed that he was "no longer seeking to assert claims on behalf of any putative collective action class[.]" ECF No. 28-3, Settlement Agreement and Release ("Settlement Agreement") at 1. The settlement would resolve and dismiss Plaintiff's claims in

---

[1] Defendant Cindy Doe's last name remains unknown to Plaintiff.

exchange for Defendants making a one-time payment of $15,000.00, which consists of $7,928.66 payable to Plaintiff, $3,964.34 payable to Plaintiff's counsel for attorney's fees, and $3,107.00 payable to Plaintiff's counsel for related costs, including filing fees, service fees, mediation fees, and mailing fees. Motion at 2.[2]

On June 26, 2023, the parties filed the present Joint Motion for approval of the settlement. ECF No. 28. The parties jointly contend that the settlement "reflects a reasonable compromise" achieved after "good faith settlement discussions" and argue that the Court should approve it. Motion at 2-3. On July 12, 2023, the Court held a settlement hearing via Zoom video and heard oral argument from the parties on the record in support of the proposed settlement. *See* ECF No. 30, Minute Entry.

## STANDARD OF REVIEW

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract[,]" and it "gives employees the right to bring a private cause of action on their own behalf and on behalf of other employees similarly situated for specified violations of the FLSA." *Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 69 (2013) (quotation omitted). Employers that violate the FLSA's guarantees are "'liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting 29 U.S.C. § 216(b)).

"In the Third Circuit, FLSA claims can be settled in two ways: (i) with the Department of Labor supervising the payment of unpaid minimum wages or overtime compensation under 29

---

[2] On June 9, 2023, the parties filed a proposed order consenting to the jurisdiction of the Magistrate Judge in this action. ECF No. 26. The District Judge signed the consent order on June 12, 2023. ECF No. 27.

3

U.S.C. § 216(c); or (ii) with the district court's approval of a settlement agreement under 29 U.S.C. § 216(b)." *Morales v. Unique Beginning Caterers LLC*, No. 20-10026, 2021 WL 5864061, at *1 (D.N.J. Dec. 10, 2021); *see also Fritz v. Terminite, Inc.*, No. 19-15749, 2020 WL 5015508, at *1 (D.N.J. Aug. 25, 2020) ("Although Third Circuit precedent is silent on the matter of judicial approval of FLSA settlements, district courts in this jurisdiction abide by the principle that settlement of FLSA claims under 29 U.S.C. § 216(b) requires court approval.").

"Although the Third Circuit has not adopted a standard for evaluating the settlement of a FLSA action, district courts within the Third Circuit have followed the guidance set forth by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982)." *Fritz*, 2020 WL 5015508, at *1 (citation omitted). To approve a proposed settlement of FLSA claims under the *Lynn's Food Stores* standard, a district court must find "that the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions . . . ." *Howard v. Philadelphia Hous. Auth.,* 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016) (cleaned up). "In determining whether a compromise is fair and reasonable, courts in this Circuit consider both whether the compromise is fair and reasonable to the employee, and whether the compromise otherwise frustrates the implementation of the FLSA." *Morales*, 2021 WL 5864061, at *1 (citing *Gabrielyan v. S.O. Rose Apartments LLC,* No. 15-1771, 2015 WL 5853924, at *2 (D.N.J. Oct. 5, 2015)).[3]

## DISCUSSION

The Court approves the Settlement Agreement in this matter because it (1) resolves a bona fide dispute; (2) is fair and reasonable to Plaintiff; and (3) does not frustrate the implementation

---

[3] Plaintiff also asserts claims under the NJWHL, but "court approval of a settlement of those state law claims is not required." *Davis v. Essex Cnty.,* No. 14-1122, 2015 WL 7761062, at *2 n.1 (D.N.J. Dec. 1, 2015).

of the FLSA.  Each of these requirements is discussed in turn below.

## I. Bona Fide Dispute

The "bona fide dispute" element of the *Lynn's Food Stores* standard has been described as a "threshold question." *Fritz*, 2020 WL 5015508, at *2. "[T]he [c]ourt must inquire into whether the settlement 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute' or whether it concerns some issue falling outside of an adversarial context between employer and employees, such as a 'mere waiver of statutory rights brought about an employer's overreaching.'" *Id.* (quoting *Lynn's Food Stores*, 679 F.2d at 1354).  "In other words, to constitute a bona fide dispute, the matter resolved by the settlement under review must present contested factual issues, not purely legal issues concerning the FLSA's applicability." *Id.* "Therefore, the parties are required to provide the Court with enough information for the [c]ourt to examine the bona fides of the dispute, providing a description of 'the nature of the dispute (for example, a disagreement over coverage, exemption, or computation of hours worked or rate of pay) resolved by the compromise.'" *Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2012 WL 1019337, at *6 (D.N.J. Mar. 26, 2012) (quoting *Dees v. Hydradry, Inc.,* 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)).

Here, the parties argue that the settlement resolves a bona fide dispute "centered on whether Defendants or any of them failed to pay Plaintiff overtime wages during his employment . . . ." Motion at 3. "At all times, Defendants disputed [their] liability on these claims, asserting that either they are not liable for these payments or that the Plaintiffs' claims were excessive for the hours worked by the Plaintiffs." *Id*. at 3-4.  The Court finds that the parties have provided sufficient information to describe the nature of the dispute in this action.  Also, it appears that the parties have taken legitimate, adversarial positions, not only to legal questions regarding the applicability of the FLSA, but also to factual issues including the hours worked by Plaintiff and

the wages owed to him. The parties reached a settlement through the Court's mediation program, and there is no indication that the parties failed to negotiate at arm's length. Therefore, the Court concludes that the settlement resolves a bona fide dispute between the parties.

## II. Fair and Reasonable to Plaintiff

"While factors for evaluating 'fairness' of a settlement in an FLSA collective action have not been definitively set out by the Third Circuit, district courts in this Circuit have utilized the *Girsh* factors established for approving Rule 23 class action settlements . . . ." *Brumley*, 2012 WL 1019337, at *4.[4] These factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d. Cir. 1975) (cleaned up).

However, "some of the *Girsh* factors appear to be little help, if not irrelevant, in the single-plaintiff context." *Howard*, 197 F. Supp. 3d at 777 n.1 (citing *Kraus v. PA Fit II, LLC,* 155 F. Supp. 3d 516, 523 n.3 (E.D. Pa. 2016)). Thus, "[e]ven though *Girsh* may suggest the type of factors to be considered in assessing a private FLSA settlement, courts need not fall into the alluring trap of mechanically applying *Girsh* . . . ." *Id.* (quotation omitted).

The Court finds that the parties' proposed settlement is fair and reasonable under the *Girsh* factors. With respect to the first, third, fourth, fifth, and seventh factors,[5] the Court is satisfied

---

[4] Although *Girsh* was decided in the class action context, courts have applied these factors in single-plaintiff claims under FLSA. *See, e.g.*, *Zheng v. NJ Great Wall, LLC*, No. 21-16350, 2023 WL 4087088, at *3 n.5 (D.N.J. June 20, 2023); *Vidal v. Paterson Car Emporium LLC*, No. 19-12711, 2023 WL 238825, at *3 (D.N.J. Jan. 18, 2023).

[5] The second and sixth factors are inapplicable in single-plaintiff settlements.

with the settlement given the stage of the case and the amount of discovery already completed. The parties participated in a year-long process consisting of engaging in phone conferences and exchanging "information related to time worked and/or payroll records and/or other related documents." Motion at 5. The parties were represented by experienced counsel and were "informed of the legal issues and evidence" in advance of settlement negotiations. *See id*. Also, the proposed settlement prevents both parties from having to face "potentially significant and unanticipated burdens and expenses in establishing their respective positions in the litigation[,]" such as expert discovery, dispositive motions, and trial. *Id.* at 3.

With respect to the eighth and ninth factors, the Court must consider "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004). In this case, the Settlement Agreement is for $15,000.00, with $7,928.66 allocated to Plaintiff. Motion at 3. Plaintiff's counsel calculates that the maximum possible recovery, if all claims were to be established, is approximately $59,074.89, excluding attorney's fees. *Id.* at 2-3. This maximum possible recovery accounts for unpaid wages, unpaid expenses, and liquidated damages. *See* ECF No. 28-5, Damages Calculations. While the settlement amount of $15,000 is significantly less than the maximum possible recovery, it is close to Plaintiff's claimed unpaid wages of $15,829.83. *See id*. In light of the risks inherent to jury trials—where Defendants may not be found liable—this settlement provides reasonable certainty to Plaintiff. Therefore, the Court finds that the proposed settlement is fair and reasonable.[6]

### III. Furtherance of FLSA's Implementation

The Court is satisfied that the settlement does not serve to frustrate the purpose of the

---

[6] Plaintiff's counsel confirmed at the July 12, 2023 settlement hearing that Plaintiff was apprised of the tax consequences of the settlement.

7

FLSA.  "This inquiry requires consideration of three interrelated FLSA objectives . . . ."  *Ortiz v. Freight Rite, Inc.*, No. 21-1060, 2021 WL 5988582, at *4 (M.D. Pa. Dec. 17, 2021).  The first objective is "combatting 'inequalities in bargaining power between employers and employees[.]'"  *Id.* (quoting *Lynn's Food Stores*, 679 F.2d at 1352 (citation omitted)).  The second objective is to ensure "widespread employer compliance with the FLSA[.]"  *Id.* (citing *Brumley*, 2012 WL 1019337, at *7).  The third objective is to honor "the 'private-public character of employee rights,' whereby the public has a general interest in employee well-being and access to fair wages[.]"  *Id.* (quoting *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 467 (E.D. Pa. 2012) (citation omitted)).  "Courts assess a settlement's consonance with these objectives by considering, *inter alia,* the scope of any confidentiality provisions and the breadth of any release of claims provisions."  *Ortiz*, 2021 WL 5988582, at *3 (citing *Haley v. Bell-Mark Techs. Corp.*, No. 17-1775, 2019 WL 1925116, at *5 (M.D. Pa. Apr. 30, 2019)).

For example, in *Brumley*, 2012 WL 1019337, at *7, the court rejected a confidentiality provision in a settlement agreement that restricted the plaintiffs from disclosing the terms of the agreement, because the provision thwarted the FLSA's objective of making employees aware of their rights.  Also, the court rejected a provision that released the defendants from all claims for FLSA violations that might arise subsequent to approval of the settlement.  *Id*. at *8.  FLSA rights may not be broadly waived by agreement because such a provision would nullify the FLSA's purpose of addressing inequalities in bargaining power.  *Id*.; *but see Clarke v. Flik Int'l Corp.*, No. 17-1915, 2020 WL 747067, at *4 (D.N.J. Feb. 14, 2020) (approving a settlement agreement containing a release provision that was "properly tailored" to the issue of the plaintiffs' wages or hours during their employment with the defendants).

Here, unlike the agreement in *Brumley*, the Settlement Agreement does not contain a confidentiality provision.  *See* ECF No. 28-3, Settlement Agreement.  Although the Settlement

8

Agreement includes a release provision, it is not unreasonably broad. *Id*. at 3-4. In *Zheng v. NJ Great Wall, LLC*, No. 21-16350, 2023 WL 4087088, at *4 (D.N.J. June 20, 2023), the Court approved a release provision in an FLSA settlement that was "appropriately narrowed" in order "to encompass only unpaid wage claims related to the causes of action alleged in the Complaint, ensuring it is not unduly restrictive." In particular, the release was limited to "all causes of action and claims which were alleged in the Complaint filed in the action, specifically including Fair Labor Standards Act and New Jersey Wage and Hour Law[.]" *Id*. Also, the release clarified that it did not restrict Plaintiff's "rights under federal, state, or local civil rights or employment discrimination laws . . . to file or otherwise institute a charge of discrimination, to participate in a proceeding with any appropriate federal, state, or local government agency enforcing discrimination laws, or to cooperate with any such agency in its investigation." *Id*. (quotation omitted). Notably, the release provision in this action contains identical language to the provision approved in *Zheng* and does not waive unrelated claims or prospectively restrict Plaintiff's FLSA rights. *See* Settlement Agreement at 3-4. Moreover, the Court finds that no other provisions of the Settlement Agreement would frustrate the purposes of the FLSA.

    **IV.    Attorney's Fees and Costs**

        **A.    Attorney's Fees**

"[I]n addition to any judgment awarded to the plaintiff or plaintiffs," the Court may "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "To determine the reasonableness of an attorneys' fee award in an FLSA action, judicial review is required 'to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" *Morales*, 2021 WL 5864061, at *2 (quoting *Brumley*, 2012 WL 1019337, at *9). In the Third Circuit, courts evaluate whether an attorney's fee is reasonable using either the percentage-of-

9

recovery approach or the lodestar formula. *See, e.g.*, *Howard*, 197 F. Supp. 3d at 780 (noting the use of the percentage-of-recovery method); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 177 (3d Cir. 2001) (noting the use of the lodestar formula). However, the percentage-of-recovery approach is the prevailing method used in the Third Circuit for wage-and-hour cases. *Bredbenner v. Liberty Travel, Inc.*, No. 09-905, 2011 WL 1344745, at *19 (D.N.J. Apr. 8, 2011). "Under the percentage-of-recovery method, courts award attorneys' fees as a percentage of the total fund recovered. While fee awards have ranged from nineteen (19) percent to forty-five (45) percent of a total settlement in the Third Circuit, fee awards around thirty (30) percent are routinely found reasonable." *Morales*, 2021 WL 5864061, at *2.

Under the percentage-of-recovery method, the attorney's fees requested here are reasonable. The gross settlement is $15,000.00, and Plaintiff's counsel is seeking $3,964.34 in attorney's fees. Motion at 2. This equates to 26.43% of the total fund. Therefore, the request is within the range of past settlements that courts in the Third Circuit have approved, and the percentage-of-recovery method favors approving the request for attorney's fees.[7]

To ensure the reasonableness of the requested attorney's fees, a court should also "cross-check" its fee calculation against the lodestar method. *Payton-Fernandez v. Burlington Stores, Inc.,* No. 22-608, 2023 WL 3145140, at *10 (D.N.J. Apr. 28, 2023). The lodestar formula "requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Loughner*, 260 F.3d at 177. Then, "[t]he lodestar crosscheck is performed by calculating the 'lodestar multiplier,' which is determined by dividing the requested fee award by the lodestar." *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 766 (E.D. Pa. 2016) (citing *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006)).

---

[7] At the July 12, 2023 settlement hearing, Plaintiff's counsel confirmed that the requested attorney's fees were authorized by Plaintiff's retainer agreement.

The lodestar approach further confirms the reasonableness of the attorney's fees sought by Plaintiff's counsel. Counsel seeks reimbursement for ninety and one half (90.5) hours of work. ECF No. 28-4, Invoice from Hang & Associates, PLLC ("Invoice") at 15. The work was performed by Plaintiff's counsel, one law clerk, and two paralegals. Motion at 6-7. The hourly rates billed were $325 by counsel, $275 by the law clerk, and $175 by the paralegals. *Id*. Courts in this district have found similar rates to be reasonable in FLSA cases. *See, e.g.*, *Lurty v. 2001 Towing & Recovery, Inc.*, No. 18-6302, 2019 WL 3297473, at *5 (D.N.J. July 23, 2019) (finding attorneys' hourly rates of $450 and $400 to be reasonable); *Santiago v. Lucky Lodi Buffet Inc.*, No. 15-6147, 2016 WL 6138248, at *4 (D.N.J. Oct. 21, 2016) (finding attorneys' hourly rates of $450 and $375 to be reasonable); *Zheng*, 2023 WL 4087088, at *5 (finding a law clerk's hourly rate of $275 and a paralegal's hourly rate of $175 to be reasonable). Multiplying the hours worked by the respective rates, *see* Invoice at 1-15, Plaintiff's counsel has accumulated a total lodestar bill of $27,347.50. When the requested fee of $3,964.34 is divided by this figure, the lodestar multiplier is 0.145. "A lodestar multiple of less than one reveals that the fee requested constitutes only a fraction of the work that the attorneys billed" and thus, is reasonable. *Carroll v. Stettler*, No. 10-2262, 2011 WL 5008361, at *8 (E.D. Pa. Oct. 19, 2011). In sum, the Court approves the requested attorney's fees because they are reasonable under both the percentage-of-recovery approach and the lodestar crosscheck.

   **B.**  **Costs**

As previously stated, 29 U.S.C. § 216(b) allows for the "costs of the action" to be paid by the defendant in an FLSA case. Courts within the Third Circuit have approved costs including complaint filing fees, subpoena invoices, mileage and parking, mediation fees, and calling campaigns. *Keller v. TD Bank, N.A.*, No. 12-5054, 2014 WL 5591033, at *16 (E.D. Pa. Nov. 4, 2014); *see also Morales*, 2021 WL 5864061, at *3 (approving a request for costs including the

11

filing fee, service of process, and mediation fees).

Here, Plaintiff's counsel seeks reimbursement of $3,107.00 in costs. Motion at 2. This is broken down into $401.00 in filing fees, $205.00 in service of process fees, and $2,500.00 in mediation fees. Invoice at 15.[8] Plaintiff's counsel has attached itemized receipts for the service of process and mediation fees. *Id.* at 16-22. Requests for these categories of fees have been approved in other FLSA cases, and none of the amounts is excessive. Thus, the Court approves Plaintiff's counsel's request for the payment of costs.

## CONCLUSION

For the reasons set forth above, the Court concludes that the proposed settlement resolves a bona fide factual dispute, is fair and reasonable to Plaintiff, and furthers the implementation of the FLSA. Also, Plaintiff's counsel's request for attorney's fees and costs is reasonable. Accordingly, the parties' Joint Motion for approval of their Settlement Agreement is **GRANTED**, and the settlement is **APPROVED**. An appropriate Order accompanies this Opinion.

s/ Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

---

[8] There is a discrepancy of one dollar between the itemized costs and the total costs requested. However, this minor difference is insignificant for approval of the requested costs.